**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (CSB# 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYLER WARRINER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br><br>vs.<br><br>PINGTAN MARINE ENTERPRISE LTD., XINRONG ZHUO, ROY YU, JIN SHI, AND XUESONG SONG,<br><br>Defendants. | CASE No.:<br><br>CLASS ACTION<br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tyler Warriner, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, United States

1

Securities and Exchange Commission ("SEC") filings, and information readily obtainable on the Internet.  Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased the common stock of Pingtan Marine Enterprise Ltd. ("Pingtan" or the "Company") between May 14, 2013 and November 6, 2014 (the "Class Period"), inclusive, seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.     On October 25, 2012 the companies China Growth Equity Investments Ltd. ("CGEI"), China Dredging Group Co., Ltd. ("CDGC") and Fujian Provincial Pingtan County Ocean Fishing Group Co., Ltd. ("Pingtan Fishing") announced that CDGC was going to be merged into CGEI and that CGEI would then acquire Pingtan Fishing. The merger was complete on February 25, 2013 with the resulting entity now known as Defendant Pingtan Marine Enterprise Ltd. ("Pingtan").

3.     During the Class Period, the Company engaged in related party transactions that were not properly disclosed to investors and were detrimental to Pingtan and its shareholders.

4.     Defendant Xinrong Zhuo's wife, Ping Lin, is the majority shareholder of Fuzhou Honglong Ocean Fishery Co. Ltd. ("Hong Long"). Pingtan and Hong Long engaged in many improperly disclosed related party transactions.

5.     Due to the failure to properly report these related party transactions, Pingtan's financial statements during the Class Period were materially false and misleading.

## JURISDICTION AND VENUE

6.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §78j (b) and 78t (a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

7.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

8.     Venue is proper in this Judicial District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred in this District.

9.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

10.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Pingtan common stock at artificially inflated prices during the Class Period and has been damaged thereby.

11.     Defendant Pingtan is incorporated in the Cayman Islands with its headquarters located in Fuzhou in the People's Republic of China ("PRC"). The Company is an ocean fishing business that owns or operates vessels in the Indian Exclusive Economic Zone and the Arafura Sea of Indonesia. The Company provides seafood throughout the PRC. During the Class Period, the Company's stock was traded on the NASDAQ under the symbol "PME."

12.     Defendant Xinrong Zhuo ("Zhuo") is and was the Company's Chief Executive Officer and Chairman of the Board of Directors at all relevant times during the Class Period.

13.     Defendant Roy Yu ("Yu") is and was the Company's Chief Financial Officer at all relevant times during the Class Period.

14.     Zhuo and Yu are collectively referred to hereinafter as the "Individual Defendants."

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

15.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased the common stock of Pingtan during the Class Period and who were

damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Pingtan's common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Members of the Class may be identified from records maintained by Pingtan or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the misstatements and omissions alleged herein were made with scienter;

(c)     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations of Pingtan; and

(d)     to what extent the members of the Class have sustained damages, and the proper measure of damages.

20.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

**SUBSTANTIVE ALLEGATIONS**

21.     The Class Period begins on May 14, 2013 when the Company filed with the SEC a materially false and misleading Form 10-Q for the first quarter ended March 31, 2013 ("1Q13 10-Q"). The 1Q13 10-Q contained incorrect financial statements. The 1Q13 10-Q was signed by Defendants Zhou and Yu.

Accompanying the 1Q13 10-Q were executed Sarbanes-Oxley Act of 2002 ("SOX") certifications of Defendants Zhou and Yu.

22.    On August 9, 2013, Pingtan filed with the SEC a materially false and misleading Form 10-Q for the second quarter ended June 30, 2014 (the "2Q13 10-Q"). The 2Q13 10-Q was false and misleading because they contained incorrect financial statements. The 2Q13 10-Q was signed by Defendants Zhou and Yu. Accompanying the 2Q13 10-Q were executed SOX certifications of Defendants Zhou and Yu.

23.    On November 14, 2013 Pingtan filed with the SEC a materially false and misleading Form 10-Q for the third quarter ended September 30, 2103 (the "3Q13 10-Q"). The 3Q13 10-Q failed to properly disclose related party transactions. The 3Q13 10-Q states in relevant part:

> On June 19, 2013, the Company entered into a master agreement with a related company, Fuzhou Honglong Ocean Fishery Co.,Ltd ("Hong Long") to acquire 46 fishing vessels with total consideration of $410.1 million that was based on independent valuation reports dated June 6, 2013. The major shareholder of Hong Long is Ms. Ping Lin, spouse of Xingrong Zhuo, the Company's Chairman and CEO, who holds 66.47% whereas the remaining two shareholders hold 33.53% during the second quarter of 2013. Mr. Zhuo currently holds about 56.2% of PME. The transaction between PME and Hong Long is accounted as common control transaction. Based on Accounting Standards Codification ("ASC") 805-50, PME recorded the value of $21.8 million (RMB 133,701,821) as the cost of the vessels which was the net carrying amount recorded in Hong Long's books at the date of transfer. The balance of $388.3 million above carrying amount treated as a return of capital in the equity accounts. $273.6 million was recorded as a reduction in retained earnings and the balance of $114.7 million applied to additional paid-in capital.

24.   The 3Q13 10-Q was signed by Defendants Zhou and Yu. Accompanying the 3Q13 10-Q were executed SOX certifications signed by Defendants Zhou and Yu.

25.   On March 10, 2014 Pingtan filed with the SEC a materially false and misleading Form 10-K for the year ended December 31, 2013 (the "2013 10-K"). The 2013 10-K contained incorrect financial statements and the disclosure of related party transactions were false and misleading. The 2013 10-K was signed by Defendants Zhou and Yu. Accompanying the 2013 10-K were executed SOX certifications signed by Defendants Zhou and Yu.

26.   On May 7, 2014 the Company filed with the SEC a materially false and misleading Form 10-Q for the first quarter ended March 31, 2014 (the "1Q14 10-Q").  The financial statements contained in the 1Q14 10-Q and the disclosure of related party transactions were false and misleading. The 1Q14 10-Q was signed by Defendant Zhou and Yu. Accompanying the 1Q14 10-Q were the executed SOX certifications of Defendants Zhou and Yu falsely attesting to the accuracy of the 1Q14 10-Q.

27.   On August 7, 2014 the Company filed with the SEC a materially false and misleading Form 10-Q for the second quarter ended June 30, 2014 (the "2Q14 10-Q").  The financial statements contained in the 2Q14 10-Q and disclosure of related party transactions were false and misleading.

28.    The   2Q14   10-Q   was   signed   by   Defendant   Zhou   and   Yu. Accompanying the 1Q14 10-Q were the executed SOX certifications of Defendants Zhou and Yu falsely attesting to the accuracy of the 2Q14 10-Q.

### The Truth Begins to Emerge

29.    On June 13, 2014 the article "Fishy Business At Pingtan Marine Enterprise" by Michael Sacerdote was published on SeekingAlpha.com. This article raised red flags regarding the disclosure Pingtan's related party transactions; specifically the ones involving Hong Long and other entities controlled by Defendant Zhou and/or his relatives. The article states in relevant part:

- "It doesn't matter which way the money is moving in these related-party transactions. When a company reports over 3 dozen related-party transactions, many involving the CEO's cousins, brothers-in-law, sister, father, niece and numerous companies controlled by the CEO, it makes me wonder whether management is acting strictly in the best interest of shareholders."

- "We have entered into certain pledge agreements pledging 22 fishing vessels as collateral to secure a loan to Hong Long, a fishing company controlled by spouse of Mr. Xinrong Zhuo. **The pledge has no beneficial purpose for us and we could lose our fishing vessels if Hong Long were to default on the loans, which could be detrimental for our operations.**"

- "As of March 31, 2014 the company had 38 vessels (30% of Pingtan's entire fleet) pledge as collateral, the majority for related parties."

- "According to page 25 of the 10-Q for the period ending 3/31/14, the 22 vessels pledged as collateral for the benefit of Hong Long have a total value of at most $20.2 million, or $0.92 million per vessel. Based on these estimates, my opinion is that Pingtan purchased 46 vessels

from Mr. Zhou's wife at prices in the range of 8-10 times more than the cost of the vessels purchased from unrelated parties."

30.     The release of this SeekingAlpha.com article shocked the market and caused the Company's stock fall $0.84 per share, or about 25%, to close at $2.47 per share on June 13, 2014.

31.     On November 6, 2014 the Company issued a press release entitled "Pingtan Marine Enterprise Files Amended Financial Results To Reflect 20 Fishing Vessels Leased At Historical Cost; Schedules 2014 Third Quarter Financial Results And Conference Call." The press release disclosed the Company's need to restate its previously issued financial statements for the years ending December 31, 2012 and 2013 and for the periods ending March 31, 2014 and 2013 as well as June 2014 and 2013. This press release also was filed as an exhibit to Form 8-K filed with the SEC. The press release states in relevant part:

> FUZHOU, China, Nov. 6, 2014 /PRNewswire/ -- Pingtan Marine Enterprise Ltd. (PME), ("Pingtan," or the "Company"), an integrated marine services company in the People's Republic of China (PRC), announced today that t**he Company will restate its previously issued annual financial statements for the years ended December 31, 2013 and 2012, and for the periods ended March 31, 2014 and 2013, and June 2014 and 2013 primarily to reflect 20 fishing vessels leased from a related party pursuant to an operating lease rights agreement at historical cost in property, plant and equipment, clarify certain disclosures, and record other miscellaneous adjustments such as the reclassification of certain balance sheet items and adjustments to depreciation and amortization expense. This restatement had the effect of reducing total assets by $188**

**million and stockholder's equity by $187 million at December 31, 2013.**

The restatement had a positive impact on the consolidated statement of income for all affected periods. For the year ended December 31, 2013, net income from continuing operations increased by approximately $1.6 million, or $0.01 per basic and diluted share, to $47.1 million, or $0.60 per basic and diluted share.

Mr. Xinrong Zhuo, Chairman and CEO of the Company, commented, "We worked diligently with our newly appointed auditors, BDO China, and our newly appointed financial accounting consultant to properly reflect the accounting impact of these restatements and we have improved our financial reporting capabilities. The immediate impact of these restatements on our consolidated financial statements was a reduction in our total assets and shareholders' equity, and a benefit to our consolidated statement of income due to lower depreciation and amortization expenses. We do not expect these accounting changes to have any current or future impact on the profit potential for Pingtan as we expand our fleet."

(emphasis added)

32.    On November 6, 2014, the Company filed a Form 8-K with the SEC announcing that previously issued financial statements could no longer be relied upon. The announcement states in relevant part:

Item 4.02 Non reliance on Previously Issued Financial Statements or a Released Audit Report or Completed Interim Review

On November 4, 2014, ,**the Audit Committee of the Board of Directors of Pingtan Marine Enterprise., Ltd. (the "Company", "us", "we"), ("our") concluded that certain of the Company's consolidated financial statements could no longer be relied upon and the Company needs to correct the following consolidated financial statements to reflect these errors:**

**• our audited consolidated balance sheets as of December 31, 2013 and 2012 and the related consolidated statements of income and**

comprehensive income for the years ended December 31, 2013 and 2012.

• our unaudited consolidated balance sheet as of September 30, 2013 and the related condensed consolidated statements of income and comprehensive income for the three and nine months ended September 30, 2013.

• our unaudited condensed consolidated balance sheets as of June 30, 2014 and 2013 and the related condensed consolidated statements of income and comprehensive income for the three and six months ended June 30,. 2014 and 2013.

• our unaudited condensed consolidated balance sheets as of March 31, 2014 and 2013 and the related condensed consolidated statements of income and comprehensive income for the three months ended March 31,. 2014 and 2013.

The Company, including the Audit Committee of the Board of Directors, has discussed these matters with the Company's previous independent registered public accounting firm, UHY VOCATION HK CPA LIMITED.

We shall file an amended 10-K report for the year ended December 31, 2013. The amended Annual Report on Form 10-K/A of Pingtan Marine Enterprise Ltd for the year ended December 31, 2013 will reflect the restatement of our consolidated financial statements as of December 31, 2013 and 2012 and for the years ended December 31, 2013 and 2012.

We will file amended 10-Q reports for the periods ended June 30, 2014 and March 31, 2014. The amended Quarterly Reports on Form 10-Q/A of Pingtan Marine Enterprise Ltd for the periods ended June 30, 2014 and March 31, 2014 will reflect the restatement of our unaudited consolidated financial statements as of June 30, 2014 and March 31, 2014, and for the three and six months ended June 30, 2014 and 2013, and for the three months ended March 31, 2014 and 2013.

The Quarterly Reports on Form 10-Q of Pingtan Marine Enterprise Ltd for the period ended September 30. 2014 will reflect the restatement of our unaudited consolidated financial statements for the three and nine months ended September 30, 2013.

The effect of this restatement in the Company's consolidated financial statements at December 31, 2013 and 2012 and for the years ended December 31, 2013 and 2012 are summarized and shown in the tables as follows:

The Company's consolidated financial statements will be restated as of December 31, 2013 and 2012 and for the years ended December 31, 2013 and 2012. We incorrectly reflected certain balances of China Growth Equity Investments Ltd. in our consolidated financial statements at December 31, 2012 that should have been reflected as part of the recapitalization of the Company on the effective date of the share exchange agreement that occurred on February 25,

**2013.** Accordingly, we will amend our consolidated financial statements for the year ended December 31, 2013 and 2012 to only reflect the historical consolidated financial statements of CDGC and Merchant Supreme as the accounting acquirer prior to February 25, 2013 and the consolidated financial statements of PME, CDGC and Merchant Supreme and related subsidiaries for all periods subsequent to the closing date.

**In summary, the effect of such restatement at December 31, 2012 and for the year ended December 31, 2012 was primarily to reduce cash by $3,565,355 for the amount of cash acquired on the merger date of February 25, 2013, to increase net income by $2,376,347 by reducing general administrative expense for amounts related to accounting acquire prior to the merger date, to increase net income and property and equipment by $606,335 due to the reduction of depreciation expense and an increase in capitalized interest, and to remove additional paid-in capital related to the accounting acquiree of approximately $5.9 million.**

Additionally, we restated our consolidated financial statements as of December 31, 2013 and for the year ended December 31, 2103 to:

a)   adjust the prepaid vessel rights to the historical cost of the vessels leased which is the historical cost of the 20 vessels on the books of Hong Long, to reflect the historical cost of the 20 leased vessels as a capital lease and reclassify such amounts to property, plant and equipment, to adjust the related depreciation and amortization expense, and to reflect any excess amounts paid for the leased operating rights as a capital distribution pursuant to ASC 805-50;

b)   clarify certain disclosures related to the acquisition of 46 vessels from a related party in June 2013 and disclosure related to the acquisition of operating license rights to 20 vessels in December 2013 from a related party; and,.

c)   to record other miscellaneous adjustments such as the reclassification of certain balance sheet items and adjustment to adjust depreciation expense.

**In summary, the effect of such restatement at December 31, 2013 and for the year ended December 31, 2013 was to reduce total assets by approximately $188 million primarily related to the adjustment of prepaid vessel rights to the historical cost of the vessels leased which is the historical cost of the 20 vessels on the books of Hong Long and to reflect the historical cost of the 20 leased vessels as a capital lease and reclassify such amounts to property, plant and equipment, to reduce liabilities by $1.3 million, and a related reduction of stockholders' equity by $187 million.**

The restatement had a positive impact on the consolidated statement of income for all affected periods. For the year ended December 31, 2013, net income from continuing operations increased by approximately $1.6 million, or $0.01 per basic and diluted share, to $47.1 million, or $0.60 per basic and diluted share.

Accordingly, the Company's consolidated balance sheets at December 31, 2013 and 2012 and for the years ended December 31, 2013 and 2012, the consolidated statements of income and comprehensive income (loss) and statement of cash flows have been restated herein. The effect of correcting these error in the Company's consolidated financial statements at December 31, 2013 and 2012 and for the years ended December 31, 2013 and 2012 are shown in the tables as follows:

(emphasis added)

33.     This announcement shocked the market and caused the Company's stock fall $0.10 per share, or about 7%, to close at $1.29 per share on November 6, 2014.

34.     Had the Plaintiff and the Class been aware of this adverse information they would not have purchased the Company's securities at all or would not have purchased such securities at the artificially inflated prices at which they did.

**Applicability of Presumption of Reliance:**
**Fraud-on-the-Market Doctrine**

35.     At all relevant times, the market for Pingtan common stock was an efficient market for the following reasons, among others:

(a)     The Company's stock met the requirements for listing, and was listed and actively traded on NASDAQ, a highly efficient and automated market;

(b)     During the class period, on average, over hundreds of thousands of shares of Pingtan stock were traded on a weekly basis, demonstrating a very active and broad market for Pingtan and permitting a very strong presumption of an efficient market;

(c)    Pingtan regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(d)    Numerous FINRA member firms were active market-makers in Pingtan stock at all times during the Class Period; and

(e)    Unexpected material news about Pingtan was rapidly reflected and incorporated into the Company's stock price during the Class Period.

36.    As a result of the foregoing, the market for Pingtan's common stock promptly digested current information regarding Pingtan from all publicly available sources and reflected such information in Pingtan's stock price. Under these circumstances, all purchasers of Pingtan's common stock during the Class Period suffered similar injury through their purchase of Pingtan's common stock at artificially inflated prices, and a presumption of reliance applies.

## ECONOMIC LOSS/LOSS CAUSATION

37.    The market for Pingtan's common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Pingtan's securities traded at artificially inflated prices during the Class Period. Plaintiffs and other members of the Class purchased or otherwise acquired Pingtan's common stock relying upon the integrity of the

market price of Pingtan's securities and market information relating to Pingtan, and have been damaged thereby.

38.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Pingtan's common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

39.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiffs and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about Pingtan's business and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of Pingtan and its business and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in Plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

**FIRST CLAIM**
**Violation of Section 10(b) of**
**The Exchange Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

40.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase Pingtan's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

42.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pingtan's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

43.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Pingtan as specified herein.

44.    These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pingtan's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Pingtan and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of Pingtan's securities during the Class Period.

45.    Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives,  directors, and/or agents at the Company during the Class Period and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a

senior officer and/or director of the Company, was privy to and participated in the

creation, development and reporting of the Company's financial condition; (3) each

of these Defendants enjoyed significant personal contact and familiarity with the

other Defendants and was advised of and had access to other members of the

Company's management team, internal reports and other data and information

about the Company's finances, operations, and sales at all relevant times; and (4)

each of these Defendants was aware of the Company's dissemination of

information to the investing public which they knew or recklessly disregarded was

materially false and misleading.

46.    Defendants had actual knowledge of the misrepresentations and

omissions of material facts set forth herein, or acted with reckless disregard for the

truth in that they failed to ascertain and to disclose such facts, even though such

facts were available to them. Such Defendants' material misrepresentations and/or

omissions were done knowingly or recklessly and for the purpose and effect of

concealing Pingtan's operating condition and future business prospects from the

investing public and supporting the artificially inflated price of its securities. As

demonstrated by Defendants' overstatements and misstatements of the Company's

financial condition throughout the Class Period, Defendants, if they did not have

actual knowledge of the misrepresentations and omissions alleged, were reckless in

failing to obtain such knowledge by deliberately refraining from taking those steps

necessary to discover whether those statements were false or misleading.

47.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Pingtan's securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of Pingtan's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the common stock trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pingtan's securities during the Class Period at artificially high prices and were or will be damaged thereby.

48.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding Pingtan's financial results, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pingtan's securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices that they paid.

49.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

50.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

51.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

### SECOND CLAIM
### Violation of Section 20(a) of
### The Exchange Act Against the Individual Defendants

52.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of Pingtan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's

reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

54.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

55.     As set forth above, Pingtan and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

56.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

57.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

1

## <u>JURY TRIAL DEMANDED</u>

2

3

Plaintiff hereby demands a trial by jury.

Dated: November 24, 2014

4

5

**THE ROSEN LAW FIRM, P.A.**

6

7

/s/ Laurence Rosen

Laurence M. Rosen, Esq. (SBN 219683)

8

355South Grand Avenue, Suite 2450

Los Angeles, CA 90071

9

Telephone: (213) 785-2610

10

Facsimile: (213) 226-4684

Email: lrosen@rosenlegal.com

11

12

Counsel for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint for Violation of the Federal Securities Laws